UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JESUS AMIEVA,<br><br>　　　　　　　　Plaintiff,<br>　　v.<br>BRIAN WARD, et al.,<br><br>　　　　　　　　Defendants. | Case No. 3:22-cv-00348-MMD-CSD<br><br>ORDER |

*Pro se* Plaintiff Jesus Amieva brings this civil rights action to redress constitutional violations that he allegedly suffered while incarcerated at Northern Nevada Correctional Center ("NNCC"). (ECF No. 5.) On December 7, 2022, the Court screened Amieva's First Amended Complaint ("FAC"), dismissing his unsafe conditions claim about construction fences with prejudice and dismissing his medical needs claim with leave to amend once he learned the true name of any prison official or employee who was aware of and disregarded his chronic pain condition. (ECF No. 7.) The Court instructed Amieva how he could attempt to learn the true name of any defendant, and gave him until March 7, 2023, to file either an amended complaint substituting the true name of any defendant or a motion asking the Court to issue a subpoena *duces tecum* to attempt to discover that information. (*Id.* at 8-10.)

Amieva responded with a motion for the Court to reconsider its decision dismissing without prejudice Defendants Isidro Baca and James Dzurenda. (ECF No. 8.) He also filed motions to extend the deadline to file an amended complaint and for the Court to issue a subpoena *duces tecum*. (ECF Nos. 9, 10, 12.) Thereafter, Amieva filed a Second Amended Complaint ("SAC") realleging his unsafe conditions and medical needs claims, substituting the true names of Doe Defendants for the latter claim. (ECF No. 13.)

Amieva has demonstrated that the Court overlooked factual allegations when it dismissed the unsafe condition claim. Upon second review of the FAC's allegations, the Court finds that Amieva arguably states a colorable unsafe conditions claim against Baca about the construction fences. The Court therefore grants the motion for reconsideration to that extent. But the Court denies the motion for reconsideration in all other respects.

Amieva has shown that good cause exists to extend the deadline to file an amended complaint, so the Court grants him that relief and considers his SAC to be timely filed. The Court will screen the SAC in the ordinary course. Finally, because Amieva was able to review his medical records and file an amended complaint that includes the true names of Doe Defendants who were allegedly responsible for his medical care, the Court denies without prejudice and as moot the motion for a subpoena *duces tecum*.

I.    **DISCUSSION**

LR 59-1(a) provides that reconsideration of an order that is not case-dispositive may be appropriate if "the court has overlooked or misunderstood" any point of law or fact. This means that reconsideration is appropriate if the court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. Acands, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A motion for reconsideration, however, is not an avenue to relitigate the same issues and arguments that the Court has already ruled on. *See* LR 59-1(b).

In screening the FAC, the Court dismissed without prejudice Defendants Nevada Department of Corrections ("NDOC") Director James Dzurenda and NNCC Warden Isidro Baca because it found that Amieva did not plead enough facts to causally connect them to the alleged constitutional injuries or reasonably suggest that they had sufficiently culpable states of mind. (ECF No. 7 at 5-8.) The Court dismissed with prejudice the hazardous-fence-condition claim because Amieva had twice failed to causally connect any prison official or employee to that constitutional injury. (*Id.* at 5-6.) Amieva now moves the Court to reconsider its decision dismissing without prejudice Defendants Dzurenda

and Baca from the FAC. (ECF No. 8.) The Court construes the motion as also seeking reconsideration of the decision dismissing with prejudice the unsafe conditions claim.

Amieva argues the Court's decisions were erroneous because liability attaches under 28 U.S.C. § 1983 if a person fails to perform an act that he is legally required to do, and the omission causes the deprivation. (ECF No. 8 at 3 (quoting *Wood v. Housewright*, 900 F.2d 1332, 1341 (9th Cir. 1990) (Reinhardt, J., dissenting)). And, Amieva continues, he alleged that Dzurenda and Baca "omitted acts of which they were both required to perform by not taking proper measures to protect the health and safety of offenders in the institutions of which they govern." (*Id.*) In screening the FAC, the Court did not overlook that a person can deprive another of a constitutional right if he omits to perform an act that he is legally required to do, and the omission causes the deprivation. Nor did the Court overlook Amieva's allegations that Dzurenda and Baca were required to—but did not—enact and enforce regulations about prisoner safety and access to medical care. Rather, the Court found that the allegations were too vague and conclusory to plausibly state a claim against Dzurenda or Baca.

The Eighth Amendment imposes a duty on prison officials to provide inmates "adequate shelter, food, clothing, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation omitted). "For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* The second requirement is that the prison official has a "sufficiently culpable state of mind." *Id.* "In prison-conditions cases" like this one, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.*

To plausibly state that a prison official was deliberately indifferent to an unsafe prison condition,

> subjective recklessness is required, that is, an official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of

> confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837). Knowledge can be demonstrated from circumstantial evidence, "and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. This standard can be met with evidence showing that a substantial risk to inmate safety "was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and "the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it[.]" *Id.*

According to the allegations in the FAC, Peek Brothers Construction performed underground pipeline repairs at NNCC from May to October 2018. (ECF No. 5 at 3.) Dzurenda hired the construction company, and work was performed under Baca's direction. (*Id.* at 4*.*) The construction company placed chain-link fences around their trenches at the end of each workday. (*Id.* at 3*.*) The fences were not weighted, tied down, or anchored and continuously fell. (*Id.*) No tape or sign warned prisoners to keep away from the fences. (*Id.*) But search-and-escort corrections officers were "charged with the duty to inspect all fencing on each shift to ensure the fencing and structures posed no risk to the safety of the residents (inmates) and employees of the facility."(*Id.* at 6.)

Amieva was seriously injured when one of the fences fell on him in June 2018. (*Id.*) The fence that hit Amieva encircled the end of a wing of a housing unit and was placed "on an inclined hill." (*Id.*) The fence was positioned at a 45-degree angle "out over the street, the common area, [and] away from the building." (*Id.*) Amieva was using his walker at the time of the incident. (*Id.* at 4.)

Upon a second review, the Court finds these allegations are enough for screening purposes to state that the fences posed a substantial risk of serious harm to Amieva who, because he used a walker, was unable to provide for his own safety. The allegations

arguably state that the risk was obvious because the condition was longstanding—the fences were used every day for six months and fell "continuously." Amieva alleges that Baca and Dzurenda had the power to address the condition by ordering that the fences be anchored or that warning signs or tape be placed to keep prisoners at a safe distance from them. The circumstances alleged are enough to suggest for screening purposes that Baca was exposed to information about the risk that the fences posed to prisoners, *e.g.*, Baca was NNCC's Warden, the fences encircled a housing unit and at least one section protruded out over a road and common area, and search-and-escort corrections officers were charged with the duty of inspecting the fences on their shifts.

But Amieva pleads no facts to reasonably suggest that NDOC Director Dzurenda was exposed to information about the risk posed by the fence condition. For example, Amieva does not allege that Dzurenda worked at or was present at NNCC at any time during the construction, that he saw the fence condition, or that anyone informed him about the condition. Moreover, Amieva has not shown that the Court overlooked any law or fact or otherwise committed an error when it found that the allegations were not enough to state a colorable claim that Dzurenda and Baca were or should have been aware of his need for medical treatment for his chronic-pain condition. The Court therefore grants the motion for reconsideration in part as to only the decisions dismissing with prejudice the unsafe conditions claim about the construction fences and dismissing without prejudice Defendant Baca.

**II.    CONCLUSION**

It is therefore ordered that Plaintiff Jesus Amieva's motion for reconsideration (ECF No. 8) is granted in part and denied in part.

It is further ordered that the Court's Screening Order First Amended Complaint ("Screening Order") (ECF No. 7) is vacated in part as to only (1) the decision dismissing with prejudice the Eighth Amendment claim for deliberate indifference to unsafe prison conditions and (2) the decision dismissing without prejudice Defendant Isidro Baca.

/ / /

It is further ordered that the Eighth Amendment Claim for deliberate indifference to unsafe prison conditions, as pled in the First Amended Complaint (ECF No. 5), can proceed against Defendant Baca.

It is further ordered that the motions for extensions of time to file a second amended complaint (ECF Nos. 9, 12) are granted *nunc pro tunc*.

It is further ordered that the Second Amended Complaint (ECF No. 13) is timely filed. The Court will screen the Second Amended Complaint in a separate order. The screening process may take several months.

It is further ordered that the motion for issuance of a subpoena *duces tecum* (ECF No. 10) is denied without prejudice and as moot.

DATED THIS 14th Day of April 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE